IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-00050-REB-MEH

WILLIAM C. CRABBE,

    Applicant,

v.

B. DAVIS, Warden,

    Respondent.

---

**RECOMMENDATION ON APPLICATION FOR WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

---

Pending before the Court is Petitioner William C. Crabbe's Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 [filed January 11, 2009; docket #1]. In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation. The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication. Based on the record contained herein, the Court RECOMMENDS that Petitioner's Application be **denied**.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or

**BACKGROUND**

Petitioner currently serves a thirty-seven month term of imprisonment at the Federal Prison Camp in Florence, Colorado. (Docket #12-1 at 3.) Petitioner is serving this sentence for "Failure to Pay Over Employee Federal Payroll Taxes, Aiding and Abetting" and "Filing of False Tax Returns, Aiding and Abetting." (Docket #12-2 at 2.) His projected release date is July 17, 2011, via good conduct time release. (*Id.* at 3.)

On January 11, 2010, Petitioner, proceeding *pro se*, initiated this action by filing an application seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Docket #1.) In his application, Petitioner requests that Respondent be ordered to (1) reconsider his Residential Reentry Center ("RRC")[2] designation in accordance with the Second Chance Act of 2007 and 18 U.S.C. § 3624(c); (2) provide a written explanation of its decision; and (3) designate Petitioner twelve months of RRC placement. (*Id.* at 2, 5.)

Petitioner provides two main arguments in support of his requests for relief. First, Petitioner asserts that the Bureau of Prisons' decision to give him only ninety days in an RRC is "not driven by the use of objective criteria and is, therefore, both capricious and arbitrary." (*Id.* at 3.) Second, Petitioner contends that the Bureau of Prisons' RRC designation was "largely driven by regional memoranda" that contradict the intent of the Second Chance Act of 2007. (*Id.*) Petitioner primarily

---

adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

[2] An "RRC" is also commonly referred to as a "Community Corrections Center" or a "halfway house." (*See* docket #12-3.) An RRC is a correctional facility that is designed to help inmates make the transition from prison life back into society, with the "ultimate goal" being to "maximize each eligible inmate's chances for successful release and a law-abiding life." (*Id.* at 9.)

alleges that the Bureau of Prisons ("BOP") did not act in accordance with the Second Chance Act of 2007 when determining his RRC placement. (*See id.*)

In response, Respondent contends that the Court "should deny the Application because the BOP's 90-day designation fully complies with the requirements of the Second Chance Act, 18 U.S.C. § 3624(c), and BOP policy." (Docket #12 at 2.) In support of this contention, Respondent asserts that (1) the evaluation conducted by Mr. Porco constitutes an individualized review in accordance with the requirements of the Second Chance Act; (2) Petitioner fails to demonstrate why a ninety-day RRC designation is "arbitrary, capricious, or unreasonable;" and (3) the BOP memoranda referenced by Petitioner are in no way inconsistent with the Second Chance Act. (*Id.* at 7-8.) Accordingly, Respondent argues that the Court should deny Petitioner's Application for Habeas Corpus. (*Id.* at 8.) Petitioner filed a timely reply brief in support of his petition. (Docket #13.)

## **LEGAL STANDARD**

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The court should not be the *pro se* litigant's advocate. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A Section 2241 habeas proceeding is generally "'an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.'" *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting

5

*Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)). "A motion pursuant to § 2241 generally ... [includes] such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001). "A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity and must be filed in the district where the prisoner is confined." *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Here, in challenging his transfer to an RRC, Petitioner correctly filed his Application pursuant to 28 U.S.C. § 2241 in the District of Colorado where he is incarcerated.

## ANALYSIS

**I.     Petitioner's RRC Designation was Made in Accordance with the Second Chance Act**

Petitioner asserts that his designation of ninety days in an RRC was "capricious and arbitrary" because the decision was not driven by the use of objective criteria.[3] (Docket #1 at 3.) Specifically, Petitioner contends that the BOP has failed to justify the reasons for its determination, and that "the BOP is not using valid processes in making these determinations." (Docket #2 at 5-7; docket #13 at 6.)

The Second Chance Act of 2007 increased the maximum time available for pre-release RRC placement from six months to twelve months. *See* 18 U.S.C § 3624(c)(1) (2010). Specifically, the Statute requires that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a

---

[3] Any claim that Petitioner may make under sections 554, 555, or 701-06 of title 5 of the United States Code are inapplicable to the requirements listed in 18 U.S.C. §§ 3621(b), 3624(c). *See* 18 U.S.C. § 3625.

6

reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

*Id.* Under the Act, the BOP is required to conduct an individualized assessment of each inmate to determine when the inmate should be placed in an RRC, ensuring that the inmate's time in an RRC is "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." *Id.* at § 3624(c)(6)(B)-(C). The Second Chance Act also requires that the BOP consider the five factors listed in § 3621(b) when determining whether and when an inmate is sent to an RRC. *Id.* at § 3624(c)(6)(A). These factors are:

(1) the resources of the facility contemplated;
(2) the nature and circumstances of the offense;
(3) the history and characteristics of the prisoner;
(4) any statement by the court that imposed the sentence--
    (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
    (B) recommending a type of penal or correctional facility as appropriate; and
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.

*Id.* at §§ 3621(b), 3624(c)(6)(A).

A. Petitioner's RRC Review

On June 16, 2009, Charles Porco, a case manager at the Federal Prison Camp in Florence, conducted an individualized RRC review for Petitioner under the Second Chance Act in order to determine when Petitioner should be transferred to an RRC. (Docket #12-1; docket #12-6.) The review sheet that Mr. Porco used to determine Petitioner's RRC placement was attached to a sworn statement given by Mr. Porco. (*See* docket #12-1; docket #12-6.) The review sheet consists of a pre-printed form containing blank lines that have been filled in with handwriting. (Docket #12-6

at 1.) At the top, the review sheet states: "Review for Residential Reentry Center, * ** Second Chance Act of 2007***." (*Id.*) Petitioner's name was written in, along with his registration number and release date of July 17, 2011. (*Id.*) The review form lists each of the five factors that the BOP is required to consider pursuant to 18 U.S.C. § 3621(b). (*Id.*)

The first factor Mr. Porco was required to consider under § 3621(b) is the "Resources of the Facility Contemplated." The review sheet contains a heading for this factor, and pre-printed topics focusing on job, transportation, housing, medical, clothing, education, and mental health needs of Petitioner. (*Id.*) Although the form does not reflect consideration of a specific facility, the form does state that the BOP considered Petitioner's specific resources, planned residence upon release, and job skills; all of which are relevant to Petitioner's RRC placement.[4] (*Id.*) A document entitled "Release Plans to Submit to Your Case Manager" was also attached to the review sheet. (*Id.* at 3.)

The second factor to be considered under § 3621(b) is, "Nature and Circumstances of the Offense." The review sheet contains a heading to that effect, and the blank space adjacent to the heading is filled in with Petitioner's offenses: "Failure to Pay over Employee Federal Payroll Taxes, Aiding and Abetting, Filing of False Tax Returns, and Aiding and Abetting." (*Id.* at 1.)

The third factor to be considered under § 3621(b) is, "History and Characteristics of the Offender." Again, the review sheet contains a heading listing this factor. (*Id.*) Below this heading, the review sheet includes subheadings relating to "Educational/Vocational Participation," "FRP Participation," "Work Performance," "Counseling Programs," "RPP Participation," "Discipline

---

[4] "The court in *Wedelstedt v. Wiley,* which reviewed the factors listed in § 3621(b), did not list this factor as one having an 'individualized nature.'" *Bassinger v. Wiley*, No. 09-cv-00005-PAB-KLM, 2010 WL 908923, at *2 n.2 (D. Colo. March 9, 2010) (unpublished opinion) (citing 447 F.3d 1160, 1168 (10th Cir. 2007)).

History," and "Relevant prior record." (*Id.*) Next to each of these subheadings is a blank space that is filled in with Petitioner's individual characteristics relating to each topic. (*Id.*)

The fourth factor considered under § 3621(b) is, "Any Statement by the Court that Imposed the Sentence." The review sheet includes a heading with this title, and Petitioner's sentencing transcripts were attached. (*Id.*) On the back of the review sheet, Mr. Porco noted that there were "[n]o Judicial Recommendations in this case. No mention of placement in an RRC." (*Id.* at 2.)

The fifth factor considered under § 3621(b) is, "Any Pertinent Policy Statement Issued by the Sentencing Commission." Once again, the review sheet includes a heading that corresponds with this factor. (*Id.* at 1.) The review sheet notes that Petitioner was sentenced to thirty-seven months, which is below the guideline sentencing range of fifty-one to sixty-three months. (*Id.*)

In addition to the five factors listed in § 3621(b), the review sheet includes a heading titled "The Inmate has the Following Resources." (*Id.*) Underneath this heading are subheadings titled "Family Support," "Residence," "Life Skills," "Financial Resources," "Community Resources," "General Job Skills," and "Other." (*Id.*) The lines next to these subheadings are filled in with handwritten information regarding Petitioner's family, residence, financial standing, education, and job skills. (*Id.*) On the back of the review sheet, the following handwritten notes are listed:

> *No Judicial Recommendations in this case. No mention of placement in RRC.
> *Must be at current facility for 18 months with clear conduct to be considered for a nearer transfer release.
> *[Petitioner] has had 60 visits since his arrival at FCM SCP on 11/14/08.
> *Minimum Security Offenders with little or no prior criminal record are unlikely to re-offend and their recidivism rate is relatively low. They usually will not require more than a few months RRC placement.

(*Id*. at 2.)

The bottom of the review sheet contains the conclusions and reasoning for Petitioner's

9

ninety-day RRC designation. (*Id.* at 1.) Mr. Porco determined that ninety days in an RRC would be of "sufficient duration to provide the greatest likelihood of successful reintegration into the community." (*Id.*) Mr. Porco cites Petitioner's "education, family ties, financial resources and the fact that he will require very little assistance reintegrating back into society" as reasons for his recommendation. (*Id.*)

  B. <u>Petitioner's Challenge to his RRC Review</u>

Petitioner disputes the RRC assessment conducted by Mr. Porco on several grounds. First, Petitioner challenges the validity of the "financial resources" that Mr. Porco considered on the review sheet. (Docket #13 at 5.) Specifically, Petitioner alleges that his current net worth is significantly less than what is listed on an attached "Balance Sheet" dated April 4, 2008. (*Id.* at 5-6.) However, the financial resources listed on the review sheet include only the current balance of Petitioner's commissary account, not his net worth listed on the April 4 Balance Sheet. (Docket #12-6 at 1.) Similarly, in his sworn statement, Mr. Porco notes that the "financial resources" he considered relate to "the amount of money deposited into [Petitioner's] inmate account," not his net worth listed on the April 4 Balance Sheet. (Docket #12-1 at 4.) Petitioner does not challenge whether the amount in his inmate account is accurately represented. (*See* docket #13 at 5.) Accordingly, Petitioner's contention that his RRC determination is invalid due to flawed financial considerations is without merit.

Next, Petitioner challenges whether the BOP properly evaluated his education during his RRC assessment. Specifically, Petitioner asserts that "[i]t remains to be seen how much his education will positively affect his reentry, if at all." (*Id.*) In support of this statement, Petitioner claims that his education is not of value because he may not be able to work in his previous

occupations as a psychologist or a mental health administrator. (*Id.* at 4.) Petitioner may be correct that his education does not guarantee he will be able to return to his previous occupations. However, the goal of the Second Chance Act is to "afford [a] prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community," not to ensure that an inmate will be able to return to the same occupation held before incarceration. *See* 18 U.S.C. § 3624(c)(1). Certainly, Petitioner cannot dispute that his extensive education, including a master's degree and a Ph.D., has provided him skills that will assist in his ability to successfully reintegrate into society. Moreover, the Act requires the BOP to consider the "History and Characteristics of the Prisoner," which clearly includes consideration of an inmate's education level. *See id.* at § 3621(b)(3). Thus, this Court sees no error in the evaluation of Petitioner's education in his RRC review.

Petitioner also contends that it was improper for the BOP to consider "Inmate Resources" when making his RRC designation because "Inmate Resources" is not one of the five factors listed in 18 U.S.C. §3621(b). (Docket #13 at 6.) This claim fails for two reasons. First, "Inmate Resources" may be considered part of the third statutory factor in § 3621(b): "History and Characteristics of the Prisoner." *See* 18 U.S.C. § 3621(b)(3). Second, considering an inmate's personal resources helps the BOP fulfill its statutory duty to ensure that each individual inmate is placed in an RRC for "sufficient duration to provide the greatest likelihood of successful reintegration into the community." *See id.* at § 3624(c)(6)(C). Accordingly, the BOP acted within its authority when it considered "Inmate Resources" on Petitioner's review sheet.

Finally, Petitioner argues that the BOP's application of the Second Chance Act contains a "fundamental illogic" that unfairly places inmates in an "Alice in Wonderland world of reversals"

11

that is "both reprehensible and absurd."[5] (Docket #13 at 10.) Petitioner bases this claim primarily on the fact that his good behavior, strong family connections, and personal resources are used as justifications for assigning him less than the maximum amount of RRC time. (*Id.*) However, RRC placement is not meant to be "a reward for good institutional behavior." (Docket #12-3 at 8.) Instead, the BOP's "ultimate goal" of RRC designation "is to maximize each eligible inmate's chances for successful release and a law-abiding life." (*Id.* at 9.) The BOP's "ultimate goal" in RRC placements is clearly in line with the Second Chance Act's requirement that RRC placements are "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." 18 U.S.C. § 3624(c)(6)(C). Thus, it was sensible for the BOP to conclude that a prisoner who has displayed good behavior, maintains strong family connections, and has access to personal resources would need less assistance reintegrating into the community. Likewise, it would be reasonable for the BOP to conclude that a long-term inmate with no family connections and limited personal resources would need more time in an RRC to successfully assimilate back into the community. Accordingly, this Court perceives no error in the BOP's determination that Petitioner's individual circumstances warranted less than the maximum possible RRC placement.

Based on the above analysis of Petitioner's RRC designation, this Court recommends finding that the June 16, 2009 review sheet demonstrates the BOP fulfilled its obligations under the Second Chance Act and 18 U.S.C. §§ 3624(c), 3621(b). Specifically, the BOP properly conducted an individualized review for Petitioner in order to determine an amount of RRC time that would be of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

---

[5]Because the Petitioner may not seek relief on behalf of other inmates in this litigation, the Court disregards any arguments concerning other individuals, but will consider such arguments as they pertain only to Petitioner.

*See also Bassinger v. Wiley*, No. 09-cv-00005-PAB-KLM, 2010 WL 908923, at *3 (D. Colo. March 9, 2010) (unpublished opinion).[6] Accordingly, Petitioner's claims challenging the validity of his RRC assessment are without merit.

## II.     The BOP's Memoranda Do Not Violate the Second Chance Act

Petitioner contends that the BOP's RRC designations are "being largely driven by regional memoranda that promulgate criteria" which conflict with the intent of the Second Chance Act of 2007. (Docket #1 at 3.) Specifically, Petitioner alleges that these memoranda violate 18 U.S.C. §§ 3621(b), 3624(c) because they have effectively reduced the potential RRC time an inmate can receive from twelve months to six months. (Docket #13 at 7; docket #1 at 3.)

Both of the memoranda at issue in this case were addressed to chief executive officers and signed by two BOP officials, the assistant director of the Correctional Programs Division and the assistant director/general counsel. (Docket #12-4; docket #12-5.) The first memorandum, dated April 14, 2008, is titled "Pre-Release Residential Re-Entry Center Placements Following the Second Chance Act of 2007." (Docket #12-4 at 1.) The second memorandum, dated November 14, 2008, is titled "Inmate Requests for Transfer to Residential Reentry Centers." (Docket #12-5 at 1.) Both memoranda guided Charles Porco in his review of Petitioner's RRC placement. (*See* docket #12-1 at 3.)

Petitioner relies on two specific passages to support his assertion that the memoranda are in conflict with 18 U.S.C. §§ 3621, 3624. First, Petitioner directs the Court's attention to a passage from the April 14 memo which states, "[w]hile the Act makes inmates eligible for a maximum of

---

[6] In *Bassinger*, the court found that a similar BOP worksheet "demonstrates that the BOP did consider each of the five factors in relation to petitioner's request for placement in an RRC and did so in good faith." 2010 WL 908923, at *3.

12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less."[7] (Docket #12-4 at 4; docket #13 at 7.) The second passage on which Petitioner relies appears in the November 14 memo. Petitioner quotes a passage stating, "[a]n RRC placement beyond six months should only occur when there are unusual or extraordinary circumstances justifying such placement, and the regional director concurs." (Docket #12-5 at 3; docket #13 at 7.) Petitioner alleges these passages show that the memoranda "take a clear message from Congress increasing potential RRC time to 12 months and cuts it back to 6, erecting new barriers through new language that negate the obvious intent of Congress." (Docket #13 at 7.) In sum, Petitioner contends that the memoranda conflict with the Second Chance Act because (1) the memoranda require regional director approval for more than six months of RRC placement, and (2) the memoranda indicate that inmates usually should be assigned RRC placements of six months or less. (*See id.* at 6-7.)

The relevant statute, 18 U.S.C. § 3624(c)(1), requires:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (*not to exceed 12 months*) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

(emphasis added).

The memoranda do not conflict with this statute for three reasons. First, the April 14 memo explicitly requires that "Bureau staff <u>must</u> approach every individual inmate's assessment with the understanding that he/she is now <u>eligible</u> for a maximum of 12 months pre-release RRC placement." (Docket #12-4 at 4) (emphasis in original). Second, neither passage quoted by Petitioner rules out

---

[7] In his reply, Petitioner quotes only part of this sentence from the April 14 memo.

14

a possible RRC placement of twelve months; in fact, both passages necessarily imply that a designation of more than six months is possible. Third, although the Second Chance Act authorizes up to twelve months of RRC placement, it does not require such. *See* 18 U.S.C. § 3624(c)(1) (stating that a inmate should be placed in an RRC for a period "not to exceed 12 months"). Instead, the Act provides the BOP with full discretion in RRC placement. *See, e.g.*, 18 U.S.C. §§ 3621(b), 3624(c)(1),(4); 42 U.S.C. § 17541(a)(2); *see also McDonald v. Obama*, No. 10-CV-379, 2010 WL 1526443, at *8 (M.D. Pa. March 15, 2010) ("[T]he Act expressly and repeatedly emphasizes that the Bureau of Prisons retains full discretion in identifying when and how inmates are placed at RRCs."). Accordingly, this Court does not perceive a conflict between the BOP memoranda and the relevant portions of the Second Chance Act.

In his application, Petitioner relies heavily on a case from the Middle District of Pennsylvania holding that the language in the memoranda "effectively chills staff discretion because staff are aware of the institutional preference for a RRC placement of six months or less, a preference that is contrary to the apparent purpose of the Second Chance Act." *Krueger v. Martinez*, 665 F. Supp. 2d 477, 483 (M.D. Pa. 2009).

However, the *Krueger* decision is not binding on this Court and the holding conflicts with case law from this Circuit. In *Ciocchetti v. Wiley*, 358 F. App'x 20, (10th Cir. 2009) (unpublished) *cited with approval in Garza v. Davis*, 596 F.3d 1198, 1204 (10th Cir. 2010), the court addressed the issue of whether the April 14 and November 14 memoranda conflict with the Second Chance Act. In *Ciocchetti*, an inmate alleged that the memoranda violated the Second Chance Act in order to prove that pursuing administrative remedies in his § 2241 petition would be futile. 358 Fed. App'x at 24. After discussing 18 U.S.C. § 3621(b) and § 3624(c), the court held that:

15

> As its memoranda clearly indicate, the BOP recognizes its authority to place inmates in RRCs and/or CCCs for periods of time exceeding six months; instructing BOP staff to individually consider each request for a transfer based on the factors set forth in § 3621 regardless of the time remaining on the requesting inmate's sentence. Further, the fact that the regional BOP director must approve any inmate's assignment to a RRC or CCC which is greater than six months in duration, is of no consequence because this requirement in no way demonstrates a policy of categorical denial. ... As such, the district court properly dismissed Ciocchetti's § 2241 petition.

*Id.* at 22-24. In a similar case, the court in *Bun v. Wiley*, 351 F. App'x 267, 268 (10th Cir. 2009) (unpublished) *cited with approval in Garza*, 596 F.3d at 1204, held that the BOP's memoranda were not in conflict with the relevant sections of the Second Chance Act, noting that, "[the] memoranda actually support [petitioner's] contentions that inmates are. . .authorized to serve up to twelve months in an RRC." The court also held, "[c]ontrary to [petitioner's] contentions, [the requirement of regional director approval] does not run afoul of § 3624(c)." *Id.* Thus, case law from the Tenth Circuit affirms that the BOP memoranda do not violate the Second Chance Act.

The Tenth Circuit's interpretation of the memoranda is consistent with the majority view. "[T]he majority view. . . holds that the Bureau of Prisons' requirement of regional director approval, and the agency's stated view that many inmates can have their needs met [sic] RRC placements of 180 days or less, do not violate the Act."[8] *Rodriguez v. Bledsoe*, No. 10-CV-727, 2010 WL

---

[8] *See, e.g.*, *Miller*, 527 F.3d at 755-58 (8th Cir. 2008); *McDonald*, No. 10-CV-379, 2010 WL 1526443 (M.D. Pa. March 15, 2010); *Wires v. Bledsoe*, No. 09-2247, 2010 WL 427769 (M.D. Pa. Feb 3, 2010); *Fleischi v. Outlaw*, No. 09-79, 2009 U.S. Dist. LEXIS 99361 (E.D. Ark. Oct. 26, 2009); *O'Hara v. Rios,* No. 08-5160 (JRT/JJK), 2009 WL 3164724 (D. Minn. Sept. 28, 2009); *Smith v. Sanders*, No. CV 09-3083-GHK (E), 2009 WL 2900317 (C.D. Cal. Sept. 3, 2009); *Yanucci v. Stransberry*, No. 08-561, 2009 WL 2421546 (E.D. Va. July 28, 2009); *McGee v. Thomas*, No. 09-455, 2009 WL 2182385 (D. Or. July 22, 2009); *Sessel v. Outlaw*, No. 08-212, 2009 WL 1850331 (E.D. Ark. June 25, 2009); *Stanko v. Rios*, No. 08-4991, 2009 WL 1303969 (D. Minn. May 8, 2009); *Somerville v. DeWalt*, No. 09-CV-68-KKC, 2009 WL 649063 (E.D. Ky. March 11, 2009); *Snyder v. Angelini*, No. 07-CV-3073 (NGG), 2008 WL 4773142 (E.D.N.Y. Oct. 27, 2008).

2471740, at *8 (M.D. Pa. May 7, 2010); *see also Miller v. Whitehead*, 527 F.3d 752, 755-58 (8th Cir. 2008) (holding that neither the requirement of regional director approval for more than six months of RRC placement, nor the view that most inmates should receive less than six months of RRC placement, violate the Second Chance Act). Thus, the holding in *Krueger* conflicts with the Tenth Circuit's analysis, as well as with the analyses of the majority of courts that have considered the issue.

This Court perceives no conflict between the BOP memoranda and the Second Chance Act. Accordingly, the Court recommends finding no merit in Petitioner's claims that the April 14 and November 14 memoranda violate the Second Chance Act.

## **CONCLUSION**

Petitioner received an individualized review for RRC placement in accordance with 18 U.S.C. §§ 3624(c), 3621(b). Additionally, the memoranda that guided Petitioner's RRC placement review do not conflict with the Second Chance Act of 2007. Based on the foregoing, the Court RECOMMENDS that the District Court **deny** Petitioner's Application for Writ of Habeas Corpus.

Dated at Denver, Colorado, this 9th day of July, 2010.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

17